# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BRADLEY PETRY et al.

v.        Civil Action WMN-08-1642

PROSPERITY MORTGAGE CO. et al.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This civil action has been through a process of evolution since it was first filed more than five years ago. Plaintiffs' initial theory was that Long & Foster and Wells Fargo created Prosperity Mortgage "to facilitate the collection of unlawful referral fees and kickbacks" to Long & Foster from Wells Fargo. Compl. ¶ 1.[1] As a result, Plaintiffs posited that they were required "to pay higher interest rates and origination fees, including finder's fees, than they would have had to pay had they gone to and closed a mortgage with Wells Fargo directly." Id. ¶ 52. They further alleged, "[o]n information and belief," that Plaintiffs "did, in fact, pay higher interest rates and origination related fees than would have been imposed in a Wells Fargo 'direct' loan, due to the illegal finder's fees imposed on Plaintiffs." Id.

---

[1] The Court assumes in this memorandum the reader's familiarity with the extensive record in this case, including the somewhat more complicated structure and nature of the transaction that gave rise to Prosperity Mortgage, involving various Long & Foster and Wells Fargo predecessors and related entities.

After extensive discovery, it turns out that Plaintiffs were unable to find any evidence substantiating these allegations. In fact, the evidence and expert testimony suggests that Plaintiffs actually paid less for their mortgages with Prosperity than they would have for mortgages with Wells Fargo. In light of their inability to prove any actual damages, Plaintiffs indicated within the last year that they would be pursuing "statutory damages" only. In their proposed pretrial order filed on February 26, 2013, Plaintiffs confirmed their intent to abandon the allegation that they had suffered any economic injury in dealing with Prosperity as opposed to dealing directly with Wells Fargo. ECF No. 365 at 25.

As this case approached the eve of trial, Plaintiffs' proposed pretrial order, proposed jury instructions, and other associated submissions made it clear that, despite the lack of any evidence that they were overcharged for their mortgage loans, they were seeking to disgorge from Prosperity any and all of the fees paid to Prosperity for processing their loans, trebled. Not only have Plaintiffs abandoned the claim that the fees paid to Prosperity were excessive, it is significant that there is no claim that there were redundant or duplicative fees paid to Wells Fargo or any other entity in addition to the fees paid to Prosperity.

On March 12, 2013, after reviewing these submissions and Defendants' counter-submissions, the Court sent a letter to counsel explaining its understanding of the scope of the term "finder's fee" in the Maryland Finder's Fee Act. Consistent with the Court's pronouncements when ruling on the motion to dismiss in February 2009, i.e., that the purpose of the FFA was to protect the consumer from "redundant and excessive" fees and that the issue of whether Prosperity "actually performed any of those services" for which it charged was an issue central to the viability of Plaintiff's FFA claim, ECF No. 49 at 9-11, the Court opined that charges for work actually performed were not impermissible finder's fees. The Court allowed that this was a tentative conclusion and indicated that it would hear further argument at a hearing scheduled for the next day.

At that hearing, the parties argued their respective positions on the issue of what constitutes an impermissible finder's fee. Plaintiffs also candidly acknowledged that, were the Court to adopt the position set out in its March 12, 2013, letter, Plaintiffs would not be able to meet that burden. March 13, 2013, Hr'g Tr. at 3. Plaintiffs then suggested that the best course at this juncture would be to certify to the Maryland Court of Appeals the question of whether fees for "work actually performed" fall within the scope of impermissible finder's fees under the FFA. Defendants countered that the proper course

would be to simply enter judgment in favor of Defendants based upon Plaintiffs' acknowledgement that they did not have the evidence required to meet the burden spelled out in the Court's March 12, 2013, letter.  The Court invited the parties to brief their respective positions.

The parties have done so and now before the Court are two motions: Plaintiffs' motion to certify a question of law to the Maryland Court of Appeals, ECF No. 398; and Defendants' motion for order of dismissal and entry of judgment, ECF No. 399.  Both motions are fully briefed.  Having carefully considered the positions of both parties and also having presided, in the interim, over the trial of the companion case to this case, <u>Minter v. Wells Fargo Bank</u>, Civ. No. WMN-07-3442, the Court concludes that the most efficient and expedient course of action is to enter judgment in favor of Defendants and thus permit Plaintiffs to appeal this entire action to the Fourth Circuit Court of Appeals, should they so desire.

The Court reaches this conclusion based primarily upon the observation that there have been numerous potentially certifiable questions that this Court has answered in the course of this litigation; issues that could be dispositive of Plaintiffs' claims or that could significantly affect the scope of any trial in this action.  For example, as to the viability of Plaintiffs' claims, Defendants have previously requested that

the Court certify the question as to whether an entity identified as the lender in the loan documents can be deemed a broker of that loan under the FFA.  They have also argued that Plaintiffs' FFA claim is completely preempted by the federal Depository Institutions Deregulation and Monetary Control Act.  As to the scope of Plaintiffs' claims, Defendants have questioned this Court's determinations as to: the propriety of the certification of this action as a class action, the applicability of Maryland's twelve year statute of limitations to actions under the FFA, and the availability of equitable tolling to claims under the FFA.  The Court is also aware that in another action now proceeding in this Court raising similar claims and brought by the same class counsel, <u>Marshall v. James B. Nutter & Company</u>, Civ. No. RDB-10-3596, Plaintiffs' counsel has requested that Judge Bennett certify to the Maryland Court of Appeals the question as to whether a claim for conspiracy to violate the FFA can be brought under Maryland law.  That claim was dismissed from this action at summary judgment and the resolution of that issue would also certainly affect the scope of any trial of this action.

By entering judgment and permitting an immediate appeal to the Fourth Circuit, all of these issues can be presented to that court at the same time.  It could be, as Plaintiffs presume, that the Fourth Circuit will certify the "finder's fee" question

5

to the Maryland Court of Appeals.  It could also be the case, however, that the Fourth Circuit will resolve that issue on its own without certification or, that it might decide one of the other issues in such a way that it need not reach the issue of the scope of permissible finder's fees.  For example, the Fourth Circuit might agree with Defendants that an entity listed on the loan documents as the lender cannot be considered a mortgage broker for purposes of the FFA.  Or, the Fourth Circuit might decide that class certification was improperly granted, a decision that would certainly impact Plaintiffs' future litigation strategy.

The Court is also concerned that presenting piecemeal this single issue to the Maryland Court of Appeals, as Plaintiffs propose, raises the possibility of trying this case twice.  Were the Maryland Court of Appeals to decide the finder's fee issue in Plaintiffs' favor, the case would proceed to trial in this Court.  The losing side at that trial is likely to appeal and the prevailing side to cross appeal on other issues.  While the chance is remote, the outcome of those appeals could result in the need for a second trial.  Having once tried most of the issues relevant in this case in the course of trying the Minter

case, the Court is reluctant to create the possibility of two more trials covering many of these same issues.[2]

Accordingly, the Court will deny Plaintiffs' request to certify a question to the Maryland Court of Appeals. In addition, the Court will enter judgment in favor of Defendants on the only claim remaining in this action, Plaintiffs' FFA claim. The Court now definitively holds for the same reasons that it tentatively opined in its March 12, 2013, letter that fees charged for work actually performed are not impermissible finder's fees under the FFA. In light of Plaintiffs' acknowledgement that they have no evidence to present to a jury that Prosperity charged any impermissible finder's fees under this view of the FFA, Defendants are entitled to judgment as to Plaintiffs' FFA claim.[3]

---

[2] After sixteen days of trial in Minter, the jury returned, in under three hours, a verdict in favor of Defendants as to all of Plaintiffs' theories. Yesterday, Defendants filed a "supplemental memorandum" in which they argue that the jury's verdict in Minter carries a preclusive effect in this action. ECF No. 406. Because the Court finds that judgment should be entered on other grounds, the Court need not reach that additional ground at this time and has not considered the arguments raised in this supplemental memorandum. The Court notes, however, that, whatever the legal implications of the Minter verdict on the viability of claims and defenses in Petry, it seems that this verdict might bring some practical and strategic considerations to this action.

[3] The Court notes that, while Plaintiffs argue that certification is a preferred option to the entry of judgment, they make no argument that Defendants are not entitled to judgment under the Court's view of the FFA. The Court also notes that, to the

A separate order consistent with these conclusions will issue.

```
                            _____/s/_____
                            William M. Nickerson
                            Senior United States District Judge
```

DATED: June 20, 2013

---

credit of Plaintiffs' counsel, they do not argue that they would have been able to develop evidence of excessive, redundant, or padded fees had they understood earlier that this would be their burden. Plaintiffs certainly had every incentive in this case and in the Minter case to develop any evidence that they could indicating that Prosperity overcharged for its mortgage loans.